UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 1:09-cr-91 |
| v. | ) | |
| | ) | Judge Mattice |
| CURTIS L. JACKSON | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendant Curtis Jackson's Objection to Report and Recommendation [Court Doc. 46].

Defendant filed his Motion to Suppress [Court Doc. 18] which was referred to Magistrate Judge William B. Mitchell Carter. [Court Doc. 19]. Magistrate Judge Carter held an evidentiary hearing on Defendant's Motion to Suppress and issued his Report and Recommendation which recommended that Defendant's motion be denied [Court Doc. 44]. Defendant timely filed an objection to Magistrate Judge Carter's R&R [Court Doc. 46].

The Court has now reviewed the entire record pertinent to the instant objection, and for the reasons described below, the Court will **ACCEPT and ADOPT** part of Magistrate Judge Carter's R&R, **REJECT** part of the R&R, and will **GRANT IN PART** and **DENY IN PART** Defendant's Motion to Suppress.

I.  **STANDARD OF REVIEW**

The Court must conduct a *de novo* review of those portions of the Report and Recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations 28 U.S.C. § 636(b)(1)(C).

## II. FACTS

Magistrate Judge Carter held evidentiary hearings on Defendant's Motion to Suppress on September 30, 2009, October 14, 2009, and October 15, 2009, during which Lucas James Fuller ("Fuller"), Sean O'Brien ("O'Brien"), Christopher Tinney ("Tinney"), and William Atwell ("Atwell") testified. All of these witnesses are officers with the Chattanooga Police Department. In his R&R, Magistrate Judge Carter recounted at some length the facts developed at the evidentiary hearings. (Court Doc. 44, R&R at 1-7). Defendant has not objected to the facts as outlined in Magistrate Judge Carter's R&R. Instead, the objections focus on the legal conclusions drawn from the facts. Accordingly, the Court **ADOPTS BY REFERENCE** the facts as set out in Magistrate Judge Carter's R&R. (*Id.*) The Court will refer to the facts only as necessary to analyze the issues raised on objection.

## III. ANALYSIS

Defendant was charged in a two-count Indictment based on evidence procured during two separate traffic stops–one on July 25, 2008, and one on April 18, 2009. Defendant objects to Magistrate Judge Carter's conclusions regarding both stops, and the Court will assess them separately.

### A. July 25, 2008 Traffic Stop

Defendant asserts two objections regarding this stop. First, Defendant disagrees with Magistrate Judge Carter's conclusion that the length of the traffic stop was reasonable. (Court Doc. 46, Def.'s Objs. at 2.) Defendant argues that the officer never started writing a ticket and spent time trying to summon a drug dog to the scene, which makes the length

of the stop "suspect." (*Id.*) Defendant contends that the officers had no valid reason to hold him for any length of time because they relied on vague suspicions about Defendant's nervousness and a wad of cash felt on his person. (*Id.* at 3.) Second, Defendant claims that Officer Fuller's action of putting his head inside the car to attempt to smell the marijuana that Officer Tinney noticed was a warrantless search of the car without probable cause. (*Id.* at 2-3.) Because Fuller could not smell marijuana outside the car but used the smell as justification to search the vehicle, Defendant asserts that the search is invalid. (*Id.* at 3.)

### 1. *Length of Stop*

In the R&R, Magistrate Judge Carter found that approximately 17 minutes elapsed from the beginning of the traffic stop to the time when cocaine was discovered in Defendant's car, and concluded that this was not an unreasonable amount of time. (R&R at 11.) For the first 10 minutes, Officer Fuller was waiting on computer checks. (*Id.* at 10-11.) Two minutes passed from the completion of the computer checks and when Officer Tinney noticed a marijuana smell coming from the car, but Fuller had not yet written the speeding ticket during that two minute period. (*Id.*) After the officers determined that there was probable cause to search the car, only approximately five minutes passed before the cocaine was located. (*Id.* at 11.)

Magistrate Judge Carter analyzed whether the two-minute period between the end of the computer checks and the establishment of probable cause, based on the smell of marijuana emanating from the vehicle, was unreasonable. (*Id.*) Magistrate Judge Carter determined that there were several reasons for the officers to detain Defendant for two

minutes based on a reasonable suspicion of criminal activity. (*Id.*) Namely, Officer Fuller testified that Defendant was extremely nervous, slurring his speech, was driving a rental car rented by a third person even though he was a local resident, and Fuller could feel a wad of cash on Defendant's person when he was patted down. (*Id.*)

"Once the purpose of the traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008) (citations and internal quotations omitted). After reviewing the evidence, the Court agrees with Magistrate Judge Carter's conclusion that Defendant was reasonably detained outside the time of the actual traffic stop. Only approximately two minutes passed between the completion of the computer checks and the vehicle search, and Officer Fuller had a "reasonable and articulable suspicion that criminal activity was afoot." *Id.* (citation omitted).

On the dash camera video, Officer Fuller made several comments to Defendant that he was shaking and obviously very nervous. Fuller asked Defendant if he had swallowed something he shouldn't have swallowed because he was acting strangely and slurring his speech. Furthermore, Defendant was driving a rental car even though he was a local resident, which Officer Fuller testified might be evidence that the driver is a drug dealer unwilling to risk his or her own vehicle. (R&R at 2.) Finally, Fuller could feel a large wad of cash on Defendant during the pat down. (*Id.* at 3.) The Court finds that these observations by Officer Fuller provided him with reasonable suspicion of criminal activity, and detention of Defendant for two additional minutes beyond the initial stop was not

improper under these circumstances. Accordingly, the Court agrees with Magistrate Judge Carter's conclusion that the length of detention beyond the traffic stop did not violate the Fourth Amendment.

### 2. Search of Car

Defendant asserts that the vehicle search would have been acceptable if Officer Tinney conducted the search or Officer Fuller had smelled the marijuana outside the car; however, because Tinney noticed the odor outside and Fuller did not, Officer Fuller's action of sticking his head into the window and proceeding with a full search constituted a search without probable cause. (Def.'s Objs. at 3.) Magistrate Judge Carter found that probable cause to search the rental vehicle arose when Officer Tinney noticed the odor of marijuana. (R&R at 12.) Therefore, the fact that Fuller, and not Tinney, actually conducted the search was not relevant to Magistrate Judge Carter's analysis.

Defendant seems to question the credibility of Officers Fuller and Tinney by stating that they produced no evidence of marijuana; although they allegedly found stems and seeds in the vehicle, these items were not collected for testing. (Def.'s Objs. at 3.) It is clear from the R&R that Magistrate Judge Carter found the testimony of the officers to be credible, and Defendant did not impeach this testimony during the evidentiary hearing or present any evidence to the contrary. Under these circumstances, the Court will not disturb Magistrate Judge Carter's determination as to credibility.

As Magistrate Judge Carter acknowledged in the R&R, an odor of narcotics coming from a vehicle establishes probable cause for a search. (R&R at 12 (citing *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004) and others)). The Court credits Magistrate Judge Carter's reasoning that probable cause was established when Officer Tinney noticed

the odor, and likewise finds that Officer Fuller's search was conducted incident to that probable cause. "[P]robable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest." *United States v. McManus*, 560 F.2d 747, 750 (6th Cir. 1977) (citations omitted). This principle was also applied to a vehicle search in *McManus*. *Id.* at 751.

Therefore, the Court finds that probable cause to search the rental vehicle was properly established once Officer Tinney smelled marijuana while standing outside the vehicle. After probable cause was established, it was proper for Officer Fuller to stick his head into the window to verify the smell, especially in light of his own suspicions about criminal activity. It was also proper for Officer Fuller to conduct a full search of the vehicle at that time. Accordingly, the Court concludes that there was probable cause to search the vehicle and that Defendant's Fourth Amendment rights were not violated by the search.

The Court further finds that the July 25, 2008 stop was conducted properly and that Defendant's Motion to Suppress in regards to this stop is **DENIED**.

### B. April 18, 2009 Traffic Stop

Defendant also objects to Magistrate Judge Carter's conclusions regarding the evidence seized during the April 18, 2009 traffic stop. Although Defendant does not dispute that the initial stop was valid, Defendant essentially argues that Officer O'Brien did not have a good reason to detain him with handcuffs. (Def.'s Objs. at 1-2.) Defendant also takes issue with Magistrate Judge Carter's conclusion that the length of the stop was reasonable. (*Id.* at 2.) Defendant asserts that Officer O'Brien had no reason to hold him and that he was detained for a significant amount of time based on O'Brien's general

suspicion. (*Id.*) Defendant contends that Officer O'Brien was no longer conducting the traffic stop when Defendant was detained because he never began to write the ticket. (*Id.*)

Because both of Defendant's objections essentially concern the detention and its length, the Court will analyze the stop in its entirety. The Court notes that Magistrate Judge Carter did not specifically address the fact that Defendant was handcuffed. Instead, Magistrate Judge Carter analyzed whether the pat down of Defendant was proper and concluded that it was appropriate because Officer O'Brien was justifiably nervous about his safety. (R&R at 15-16.) The analysis of the pat down would also seem to apply to O'Brien's detention of Defendant with handcuffs, because both concern precautions for officer safety.

"A concern for officer safety permits a variety of police responses . . . including ordering a driver . . . out of a car during a traffic stop . . . and conducting pat-down searches 'upon reasonable suspicion that they may be *armed and dangerous*.'" *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005) (emphasis in original) (citations omitted). "A court reviewing a suppression motion must determine whether a reasonably prudent person in the circumstances would be warranted in believing that his safety or that of others was in danger." *United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008) (citing *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007)). Handcuffing an individual is "appropriate even when police are merely detaining, but not arresting, a suspect." *See United States v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007) (detention by handcuffing was proper based on nervous behavior); *see also Houston v. Does*, 174 F.3d 809, 815 (6th Cir. 1999) (noting that "the use of handcuffs [does not] exceed the bounds

of a *Terry* stop, so long as the circumstances warrant that precaution" and finding handcuffing for officer safety proper).

Magistrate Judge Carter found that the pat down was proper because Officer O'Brien had reasonable grounds to believe that Defendant was armed and dangerous for the following reasons: first, Defendant took an unusually long time to pull over after O'Brien activated his lights, which can indicate that he was trying to hide or retrieve drugs or a gun; Defendant placed both of his hands out of the window when he stopped, which is unusual and suggests significant dealings with law enforcement; Defendant's hand was visibly shaking when he handed Officer O'Brien his license; Defendant told O'Brien that he had a prior marijuana arrest and would not make eye contact; Defendant had a number of tattoos, which could indicate gang involvement and a likelihood of being armed; and Defendant became very defensive when O'Brien called for a canine unit. (R&R at 16.) Magistrate Judge Carter found that Officer O'Brien was reasonably nervous about his own safety at this point and could properly conduct a pat down of Defendant. (*Id.*)

Although the Court is not entirely convinced that Officer O'Brien's observations would have provided enough information to infer that the Defendant might be "armed and dangerous," the Court does not dispute that O'Brien (or a reasonably prudent person) might have had a reasonable concern for his safety due to the fact that the stop occurred at night, O'Brien was operating alone, and these observations may have heightened his concern that Defendant was armed. Therefore, the Court does not find error with Officer O'Brien's decision to conduct a pat down of Defendant. Likewise, the Court will accept that

O'Brien perceived that it was necessary to handcuff Defendant for safety reasons.[1]

Magistrate Judge Carter also analyzed Defendant's arguments about the length of the stop in depth and determined that Officer O'Brien had the necessary reasonable suspicion to detain Defendant. (R&R at 16-20.) First, Magistrate Judge Carter found that the initial traffic stop was complete when Defendant had been handcuffed and O'Brien was waiting for the drug dog to arrive. (*Id.* at 17.) Magistrate Judge Carter further found that approximately thirteen minutes passed between the time that Defendant was handcuffed and the time that the drug dug arrived. (*Id.* at 19.) The drug dog performed its sniff for approximately two minutes. (*Id.*) Magistrate Judge Carter concluded that this additional detention did not exceed the proper scope under the Fourth Amendment. (*Id.* at 20.)

As a preliminary matter, the Court agrees with Magistrate Judge Carter's conclusion that the traffic stop ended when Defendant was handcuffed. (R&R at 17-18.) Although Officer O'Brien may not have issued Defendant a ticket for the initial traffic violation, the Court will accept that his actions were "reasonably related" to the purpose of the stop up to this point. *United States v. Bell*, 555 F.3d 535, 542 (6th Cir. 2009). Therefore, Officer O'Brien's initial actions that elicited all of his observations were not necessarily improper; it was appropriate for him to ask questions, and he could lawfully order the driver to get out of the vehicle. *Id.* at 542-43 (citations omitted). The Court has already accepted that

---

[1] The Court will note, however, its confusion as to Officer O'Brien's statement to Defendant that he was handcuffing and detaining him because his answers were "highly unusual." It is difficult for the Court to understand what was unusual about the interaction between O'Brien and Defendant. The Court acknowledges that Defendant's demeanor changed somewhat after Officer O'Brien asked for consent to search the vehicle and Defendant refused consent, but the Court does not perceive that this change was "drastic," as O'Brien testified during the hearing, or that Defendant's answers became "unusual" after that point.

Officer O'Brien could pat down and handcuff Defendant for safety reasons, but after that point, O'Brien's actions were no longer related to the traffic stop. At issue, then, is the propriety of the additional fifteen minutes after the end of the traffic stop and until probable cause arose to search the vehicle. "To detain the motorist any longer than is reasonably necessary to issue the traffic citation . . . the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002).

The Court is not inclined to reject Magistrate Judge Carter's credibility determination of Officer O'Brien's testimony, nor is it willing to substitute, post facto, its own impressions for those of O'Brien; however, after reviewing the dash camera video extensively, the Court disagrees with Magistrate Judge Carter's conclusion that Officer O'Brien had a reasonable suspicion of possible criminal conduct so as to warrant the length of the detention beyond the traffic stop.

The Court takes issue with several of the factors that Officer O'Brien provided as support for his reasonable suspicion. First, the Court disputes the characterization that Defendant took an unusually long time to pull over after O'Brien had activated his lights. The video shows that the patrol car lights were activated at approximately 12:12:09. At 12:12:11, Defendant began to brake, and pulled to the side of the road at 12:12:15. At this time, however, Defendant's vehicle was almost in the middle of an intersection, so the vehicle rolled slowly through the intersection, coming to a full stop at 12:12:25. Sixteen seconds does not seem unusually long, particularly when Defendant had to cross the intersection before fully stopping.

Second, the fact that Defendant immediately put his arms outside the window after

being stopped is not, by itself, a factor that the Court would weigh very heavily as supporting a reasonable suspicion of criminal activity. Officer O'Brien testified that this was unusual behavior and that it might indicate prior significant dealings with law enforcement, but this vague possibility does not reasonably suggest that criminal activity was occurring on this occasion.[2] Third, Defendant's hand was visibly shaking when he handed O'Brien his license. Nervousness alone does not provide reasonable suspicion. *See United States v. Mesa*, 62 F.3d 159, 162-63 (6th Cir. 1995) (citations omitted); *see also United States v. Bell*, 555 F.3d 535, 540 (6th Cir. 2009) (stating that "seeming nervous or being overly cooperative [are] factors to which we have previously given little weight.").

Officer O'Brien had only these three observations available to inform his judgment when he started to engage Defendant in conversation. O'Brien began asking some general questions about Defendant's origin and destination, which did not elicit any unusual or suspicious information. Defendant told Officer O'Brien that his license had recently been reinstated, and O'Brien asked Defendant about the license revocation and any prior arrests. Defendant admitted a prior marijuana arrest. Officer O'Brien then asked Defendant how much he had on him, Defendant denied having any contraband, and O'Brien asked if he had guns in the vehicle, which Defendant also denied. O'Brien next commented on a cigar blunt in the door of the vehicle, asked if Defendant used it to smoke weed, and asked if anyone else had smoked weed in the vehicle. Defendant answered in the negative to all these questions. Officer O'Brien then asked Defendant to step out of the vehicle. Defendant complied and continued to be very cooperative with O'Brien.

---

[2] In fact, in regards to Officer O'Brien's concerns about his safety, it would appear to the Court that Defendant was signifying to O'Brien that he was not armed.

Officer O'Brien asked several questions about his tattoos and whether he was involved with gangs, and Defendant explained all of his tattoos and denied gang involvement. On the video, Defendant does not appear nervous or defensive and is not acting erratically or giving O'Brien strange answers. Officer O'Brien then asked Defendant for consent to search the vehicle and Defendant refused. After this question, Defendant's demeanor changed to be somewhat less cooperative and more defensive, and O'Brien called for a drug dog, patted down Defendant, and handcuffed him.

At that point, in addition to Officer O'Brien's three initial observations, O'Brien had made further observations: the cigar blunt in the door of the vehicle, which he testified is often hollowed out and used to smoke marijuana, Defendant's prior marijuana charge and lack of eye contact, Defendant's tattoos, which could indicate gang involvement and a likelihood that the individual is armed, and a wad of cash felt in Defendant's pocket during the pat down. None of these factors or Officer O'Brien's initial observations, taken alone, are particularly indicative of criminal activity; they are all relatively innocent facts.

The cigar blunt has little worth to the Court as a factor that should give rise to reasonable suspicion. Even taken together with Defendant's prior marijuana conviction, a *tobacco* blunt in a vehicle–without the presence of any odor of marijuana–is not enough to support a reasonable suspicion of criminal activity. Furthermore, a past marijuana charge would not automatically support a reasonable suspicion that Defendant was engaged in criminal activity on this occasion. Defendant's tattoos also carry little weight because the presence of tattoos indicates very little as a practical matter; furthermore, Defendant was fully cooperating with Officer O'Brien to explain all the tattoos, denied gang involvement, and was not threatening or defensive during that exchange. After this

-12-

conversation, O'Brien could not reasonably infer from Defendant's tattoos alone that he might have weapons on his person or in the vehicle. Likewise, the wad of cash felt in Defendant's pocket does not immediately signify, without more, that criminal activity is afoot. Simply put, there was limited evidence available to Officer O'Brien from which he could infer that Defendant was presently engaged in any criminal activity.

Even considered in the aggregate, the sum of these observations is not sufficient to support reasonable suspicion and do not give rise to more than a hunch that Defendant was engaged in criminal activity. The Sixth Circuit has stated the following:

> Although the reasonable-suspicion calculation examines the totality of the circumstances, even where the government points to several factors that this court has "recognized as valid considerations in forming reasonable suspicion," they may not together provide reasonable suspicion if "they are all relatively minor and ... subject to significant qualification," particularly where the "case lacks any of the stronger indicators of criminal conduct that have accompanied these minor factors in other cases."

*Bell*, 555 F.3d at 540 (quoting *Townsend*, 305 F.3d at 543-45). In fact, the instant case contains some factual similarities to *Townsend*, in which the government relied on the following factors to support reasonable suspicion: the defendant raised his hands in the air when the officers approached, he was unusually cooperative, nervous, and had a prior weapons arrest, the officers were told dubious travel plans from a source city for narcotics to a destination city for narcotics, the officers saw three cell phones and a Bible in the vehicle, felt rolls of currency during pat downs, the interior of the car was unkempt, and the driver was not the registered owner of the vehicle. *Townsend*, 305 F.3d at 542-45.

The *Townsend* court found that the officers lacked reasonable suspicion because these factors were all minor and were not accompanied by strong indicators of criminal

activity; therefore, the officers did not have the appropriate reasonable suspicion to detain the defendants for 30 minutes until the drug dog arrived. *Id.* at 545. The Court finds that the *Townsend* court had even more facts upon which to rely to support reasonable suspicion than the facts available to Officer O'Brien in the instant case. In this case, there were no strong indicators of criminal activity that might bolster the weak indicators referenced.[3] Although this Defendant was detained for less time than the defendant in *Townsend*–thirteen minutes instead of thirty–the Court finds that the observations cited and relied upon by Officer O'Brien are all similarly minor, subject to qualification, and did not support a reasonable suspicion of criminal activity to detain Defendant for any period of time past the completion of the stop.

The Court does not suggest, by its conclusion, that a detention for thirteen minutes is overly long when the police have a reasonable suspicion of criminal activity. Certainly, the Sixth Circuit has approved detentions of greater length. *See, e.g., United States v. Orsolini*, 300 F.3d 724, 730 (6th Cir. 2002) (hour-long detention with a 35-minute wait for the drug dog was reasonable); *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (officers had reasonable suspicion to detain defendant for an additional 30 to 45 minutes while waiting for the drug dog to arrive). Rather, the Court finds that the thirteen minute detention from the end of the traffic stop to the establishment of probable cause was inappropriate and violative of Defendant's rights because it was not justified by reasonable

---

[3] This stop can also be contrasted with the July 25, 2008 stop, where the officers observed that Defendant continued to visibly shake from nerves even after he had stepped out of the vehicle, Defendant was slurring his speech and seemed to have "cotton mouth," indicating that he might have swallowed drugs or something else recently, and Defendant was a local resident driving a rental car that was rented by a third person. These were strong indicators of drug activity observed by the officers well before Officer Fuller felt a wad of cash on Defendant during the pat down.

suspicion or any other valid stated reason.

The Court notes that shortly after Defendant was handcuffed, at approximately 12:19:24, Officer O'Brien began to explain to Defendant what would happen in the "next couple of minutes." O'Brien told Defendant that he had called for a narcotics canine to conduct a sniff around the vehicle, and if the dog alerted, that would establish probable cause to search the vehicle. The Court interprets O'Brien's statements as his acknowledgment that the time was ticking for Defendant's continued detention; Officer O'Brien clearly realizes that the traffic stop has ended and that Defendant is being detained solely to attempt to establish probable cause to search the vehicle. If Officer O'Brien had reasonable suspicion of criminal activity at this juncture, the detention would have been appropriate even in the absence of a pretextual reason for the detention. Because, however, the Court finds that the traffic stop was over, that O'Brien lacked a reasonable suspicion of criminal activity, and that O'Brien did not make any attempt at pretext to continue detaining Defendant for any legitimate reason, the Court cannot accept even a thirteen minute detention.

Therefore, the Court finds that the thirteen to fifteen additional minutes during which Defendant was detained was all time outside the scope of the traffic stop and that Officer O'Brien did not have the necessary reasonable suspicion to detain Defendant for that time. Accordingly, the Court **REJECTS** Magistrate Judge Carter's R&R as it pertains to the length of Defendant's continued detention. The Court concludes that this additional detention violated Defendant's Fourth Amendment rights and that the evidence seized during the search of the vehicle must be suppressed. Defendant's Motion to Suppress the cocaine seized during this traffic stop is **GRANTED**.

## IV. CONCLUSION

For the reasons explained above, the Court **ORDERS** as follows:

- Magistrate Judge Carter's R&R [Court Doc. 44] is **ACCEPTED and ADOPTED IN PART** and **REJECTED IN PART**;

- The R&R concerning the July 25, 2008 traffic stop is **ACCEPTED and ADOPTED** and Defendant's objection [Court Doc. 46] to the conclusions based on that stop are **OVERRULED**;

- The R&R as it pertains to the April 18, 2009 traffic stop is **ACCEPTED and ADOPTED** in regards to Defendant's detention and **REJECTED** in regards to the length of continued detention;

- Defendant's Motion to Suppress [Court Doc. 18] is hereby **GRANTED IN PART** and **DENIED IN PART**;

- The evidence seized during the July 25, 2008 stop is admissible; and

- The evidence seized during the April 18, 2009 stop is inadmissible.

**SO ORDERED** this 21st day of April, 2010.

                                                  /s/Harry S. Mattice, Jr.
                                                  HARRY S. MATTICE, JR.
                                                  UNITED STATES DISTRICT JUDGE